Case number 231635 United States of America v. Ervin Thornton II Oral argument not to exceed 15 minutes per side Ms. Mazur, you may proceed for the appellant Good morning. Good morning, and may it please the court. I reserve four minutes for rebuttal. Keep your voice up, okay? Yes, Your Honor. This is a crack case. Ervin Thornton is serving crack sentences on counts one and eight. He was therefore convicted of covered crack offenses and is eligible under section 404. The district court's contrary narrative that Thornton was convicted only of non-covered powder offenses constitutes reversible error no matter the standard of review. That is, its conclusion is implausible on this record, even without the trial prosecutor's letter. Now, Thornton's sentences on counts one and eight are incompatible with the district court's conclusion that this is a powder case, and that's because there were no quantity findings sufficient to trigger the statutory penalties on counts one or eight. So, starting with first principles. So, just a question at the outset, and just framing from at least my perspective, if you look at the indictment and the instructions, it's difficult for you because you don't have to spell it out, but they do spell it out, and they use cocaine and not cocaine-based. So, you're using something that's connected to powder. You do have that one thing where the judge defines it as covering both. But other than that, it really looks like a record of a, quote, cocaine case. And the thing that is a little troubling to me about your argument is to invert the problem and imagine someone that comes forward where everything is flipped. So, it's a case where, in the indictment, it says cocaine-based. In the instructions, it's mainly about cocaine-based. And if you win, this means that the government, in responding to a First Step Act case, would say, well, well, well, fair enough, but you need to look at it all. And there was a ton of evidence about powder cocaine. And so we really think it wasn't a crack case and therefore not eligible. So one of the benefits of sticking with the indictment and the instructions is it creates a clear rule, which is very good for some people and very bad for others. So the problem is it's very bad for your client. But I do worry about accepting your argument that that's what will happen. Thank you, Your Honor. So you can't rely on the indictment or the jury verdict in a pre-apprendi case. And that is because pre-apprendi, drug quantity, and drug type were not elements. They were sentencing factors found by the judge at sentencing. So I understand that the indictment says cocaine. It doesn't mention crack. What does the First Step Act say? What does it say, offensive conviction? It says it refers to covered offenses.  So why doesn't that prove that that's where we focus and we don't focus on sentencing? So that takes the apprendi issue off the table. I realize in a post-apprendi world, indictments look different. I got that. But so be it. The statute says covered offense. 404 says covered offense. And in most cases, 98% or more of cases, fooling is going to get you there. Right? You look at the indictment, and it's clear from the face of the indictment what the offense is. But looking at the indictment and the verdict doesn't help discern the statute of conviction in pre-apprendi cases because drug type and quantity, again, were not elements. They were sentencing factors. So in a case like this where the judgment and the verdict are silent about which subsection or penalty provision applies, the court must seek out the clearest information about what the penalty is because it's the penalty that completes the definition of the offense. The offense here is the combination of 841A and the 841B penalty provision. But the only thing that was charged is 841A, right? Correct. So the charge includes both. Well, there's also the conspiracy.  I mean, it includes all these controlled substances. Correct. And the verdict and the indictment don't contain any allegations about quantity. Help me with this. Since you're a public defender, you must know this. Doesn't the government have a duty to spell it out a little more? In other words, if you didn't spell out which drug you were talking about, which controlled substance you were talking about, when the defense comes forward and says, hey, we need more notice than controlled substances, isn't there an expectation that you don't just say controlled substances? You've got to say, is it meth? Is it marijuana? Is it cocaine? Yes. There is an expectation. So that's the expectation they were acting on when they said cocaine. Correct. But they still didn't include any quantities in the indictment. The statute doesn't require that. The penalty provision does require that, Your Honor. The statutory penalties are triggered by quantities as a matter of congressional design. And so it's really the quantity finding that completes the definition of the offense. You can only determine the statute of conviction, which is a language used in Boulding that says 404 eligibility hinges on the statute of conviction. Was the sentencing statutory minimum in the indictment? No, Your Honor. I guess I'm just back to how the first step back was written. It's written about the statutes of conviction. Right, and that's what Boulding talks about. But in order to determine the statute of conviction in a pre-apprendi case, you have to look at the sentencing record because the statute of conviction can only be determined by looking at the sentencing record because that's when the judge made findings about drug type and drug quantity, which in turn triggered the statutory penalties. And we know that 404, the first step back, eligibility hinges on the sentence because the Fair Sentencing Act didn't modify all crack penalties. It only modified the penalties in 841B1, B2, and 3. Did the district court make a finding on this at all? Yes, Your Honor. Powder cocaine that he was convicted on? Pardon? That it was powder cocaine or something else? Yes, Your Honor. The district court found that it was powder cocaine. But at sentencing, the only finding in the record that the sentencing court made is that for count one, is that the case involved 1.5 kilograms of crack. Now this finding was for the statutory penalty in addition to the guidelines, not just the guidelines as the district court incorrectly believed. So the reason... What do you think we need to do in this case then? I think that, again, building is going to get you most of the way there in determining the statute of conviction. But in pre-apprendi cases, an extra step is necessary. And that is just examining the sentencing record, the PSR, and the sentencing hearing transcript. Because, again, that's when the judge made findings about drug type and quantity. And that's when the penalty... The First Step Act comes after Apprendi. Am I right about that? Yes, Your Honor. What's your best argument about... And I do get the thrust of your point that the First Step Act is about modifying sentences. So it's not like that's lost on me. But what's your best argument for language in the First Step Act that says you need to look at the sentencing discussion, whether it was a mandatory minimum? What's the best hook to make that argument? In order to determine whether an offense is covered within the meaning of the First Step Act, building says you determine the statute of conviction. And, again, the statute of conviction is the combination of the 841A violation and the 841B penalty provision, which sets forth tiered penalties that depend on drug type and drug quantity. So you can't get to the statute of conviction on the verdict or the indictment alone. Because, A, neither contains drug quantity. And, B, pre-Apprendi, the indictment didn't have to include references to cocaine and crack in order to secure a crack sentence. What is it that's in the First Step Act that helps you on this point? Language from the First Step Act. Because it says you're just back to the point that B is the statute of conviction and B references mandatory minimums. Is that the way you get there? Yeah, that is one way. But to answer your question specifically about the language from the First Step Act, a covered offense is defined as a violation of a federal criminal statute, the statutory penalties of which were modified by the Fair Sentencing Act. The Fair Sentencing Act modified the penalties of 841B1B2 and subsection 3. So if you look at Mr. Thornton's sentences, he is serving sentences on Count 1 under subsection 2, which is the 10-year to life penalty. And under Count 8, he is serving a sentence under B2, which is the 5 to 40 years. And I think one thing that is really important, Your Honors, is that with respect to Count 8, which actually charged possession with intent to distribute cocaine, and the judgment says cocaine, when you look at the quantities for Count 8, which are set forth in paragraph 16 of the PSR, Thornton could only get a 40-year sentence based on the amount of crack seized in connection with that offense. The court would have had to find 500 grams of powder in order to trigger the 40-year sentence. The PSR contains one powder finding of 10.1 grams of powder. It also found 13 grams of crack. And to trigger that same sentence for crack, you would need only 5 grams. So I think that is really important, and it goes to the fact that you have to look at the sentencing proceeding. Okay, thank you very much. You get your full rebuttal. We'll hear from the government. Thank you. Good morning. Good morning, Your Honors. Evan Kammacher for the United States. This court should affirm the judgment below on two alternative grounds. First, there was no conviction on a covered offense. And secondly, in any event, the defendant is not eligible for resentencing on the life murder sentences. I actually think the easiest path for this court would be to take the second route. This court in a different panel in the Dale case, in which Judge White is a member, is currently considering whether this circuit might want to join either the three circuit courts that have held that non-covered offenses are never eligible for resentencing, or the other three circuit courts that have held that the non-covered offenses can be eligible only if those sentences are interdependent upon the drug offenses. We have a very clean record in this case of no interdependence, and that's because pre-Booker, there was a mandatory life sentence imposed under the sentencing guidelines on all of the three murder accounts. None of the suppositions that the defendant raises about possible interdependence in other cases can possibly apply here. The district court had no discretion to do anything other than enter sentences of mandatory life on those counts. Was that brought up before the district court? Yes, it was, Your Honor. It was brought up by the government before the district court on the 404B motion and briefed there as well as obviously briefed here. I was just going to say, did the district court make any comment about that? No, the district court simply ruled that there was no conviction that was a covered offense in the first instance. So that was the ruling of the district court. But why didn't, I mean, I'm with you, it could be the easier path. I'm just curious if you want to speculate why the court wouldn't take the easier path, the concurrent sentence point. Your Honor, it's possible that the judge didn't want to get into the legal questions that were going through the courts of appeals at that point in time. I actually have no speculation. I think probably the district court thought it was also a very clean and easy case on the first issue as well. If you say, to make sure I'm understanding the split, if you say there's no interdependence, does that not implicate the split? I mean, no one, is there anyone on the other side of that? No, there is no court in the country that has held that a non-covered offense whose sentence is not interdependent on the covered offense is plausibly subject to resentencing. And that would make no sense with respect to Congress's purpose in the First Step Act, let alone the language. Congress was simply trying to realign the differences between crack penalties and cocaine penalties, not to provide a windfall for people in Mr. Thornton's circumstance who have committed double homicide and make them actually better off procedurally because they were also charged and convicted of a covered offense, as opposed to somebody who only committed homicides. That would make no sense. There's a Seventh Circuit, the Smith Court in the D.C. Circuit, that also has rejected the broad reading. It simply held it could affirm on a record, not choosing between the never and the only if interdependent, because on the facts before it, like this one, you had a pre-Booker mandatory life sentence on a CCE charge. So that court basically said, no matter what rule this circuit might eventually adopt, this record does not allow for resentencing. Why do you think in the First Step Act, they refer to statutes of conviction, why weren't they more sensitive to the real Apprendi problem, that indictments look different today? It is surprising to me. This was about reducing sentences. It clearly is applying to mandatory minimum, and that's what they were trying to accomplish, and you would think they would have known that statutes of conviction, it just was a slightly different world, and it would have been so easy to say, if there's a mandatory minimum, make sure it's, was it a crack or a powder mandatory minimum? Your Honor, it's hard to speculate about why Congress wasn't thinking about this question, other than that Apprendi was decided in the year 2002, and of course the First Step Act is enacted 16 years later, so it's quite possible that Congress was really... I didn't think there were any such claims. Ah, yeah, good point. It was just so long after the fact, that that may be explaining why Congress didn't use that language. Yeah, good point. If there are no other questions on that issue, then let me also support the district court's finding, under clear error, that the first convictions were not covered offenses because they were for powder. As this court already indicated, the indictment uses the term only cocaine, the jury instructions in their elements use the term only cocaine, the judgment uses the term only cocaine. Cocaine is clearly disjoined from crack. As counsel noted, for count eight, there is a comment by the judge, after listening to the three elements that the jury must find beyond a reasonable doubt, as including cocaine, there's a comment that says cocaine and crack are two separate drugs. Your Honor, you refer to it being a sentence covering both. With respect, I think it actually is distinguishing them. It's basically saying, you have to find beyond a reasonable doubt cocaine, cocaine, cocaine, and by the way, cocaine and crack are two different substances. That strikes me as strengthening the point as the district court below found. There was no objection to the instructions by the court in that case. There was not, Your Honor. So if the defendant thought at some point that that line or any other line in the jury instructions was somehow confusing, the time to object would have been either at sentencing, at trial, or perhaps on direct appeal. But there does seem to have been a lot of evidence at the sentencing part about crack. Absolutely, Your Honor. That's because as part, as his role in the conspiracy, what Thornton did was he took powder cocaine and cooked it into crack. But the only purpose of looking at crack at the sentencing record was simply to establish a base offense level. And I want to disagree with my friend on the other side where she said that that finding was made both for the statutory minimum and the sentencing guidelines. There's no evidence at all of that in this record. The only reference in the PSR to crack is in paragraphs 19 and 36 where it specifically explains that it's looking at crack to establish a baseline offense level of 38. The only point that gets discussed at sentencing is where there is an objection to that finding based on, for purposes of the baseline offense. That's why the court talks about powder and crack together. The court notes repeatedly that in this record there was a vast and immense amount of cocaine, meaning powder. There was a single witness who testified that there were 16 to 17 kilograms of cocaine, meaning powder, involved in the beginning of the conspiracy. So the statutory minimum would be easily met by Thornton if you were connected to even less than a third of it. So why do they talk about crack? My supposition is because you could identify 1.5 kilograms of crack by looking at a single witness's testimony, that of Otis Brown, who said he personally brought 2 to 3 kilograms of powder cocaine to Thornton, who then cooked it up into crack. That alone made it easy to find what you needed to for the base offense level. The government said, we can introduce evidence of the vast and immense amounts of cocaine, but that would require taking the 2 to 3 kilograms of powder, which is half of what you need, and adding it to the, quote, hundreds and hundreds and hundreds of other lines in the testimony. That would be a hard, or at least a longer work, more work for the court to do. Can I ask you a question? I asked your friend on the other side about, you know, the downside of her argument of going away from the language of the indictment and jury instructions is, you know, it's nice to have a Breitland rule. It's unfortunate this Breitland rule hurts her client, but it could be very helpful to someone else where it spells out cocaine base, for example. I'm wondering if maybe that's not such a good point, because there's no reason you would know this, but I'm just wondering back then if people were as attentive to the distinction, so that my supposition would be they weren't sure they just did cocaine powder because it's used to make crack cocaine and you can use the cocaine powder itself, so that it maybe isn't a very good point, because maybe their default was to just say the powder. Yes, Your Honor. Actually, the cases back then generally used the word cocaine to mean powder and cocaine base or crack to mean crack. I understand that, but I'm worried that if they weren't sure what to do, they only talked about the powder. With the word cocaine, I got the point that that's what it refers to. With respect to Your Honor, I don't know what it means to say the prosecutor wasn't sure what to do. I would also say that the trial court knew what the trial court was doing when the trial court fashioned the jury instructions, which of course would have come after hearing all of the evidence. So the trial court was fully aware of what the nature of the case was all about. It was about the vast and immense amount of powder cocaine that originally came in the door. My friend on the other side also refers to the Coleman case, for example, as her case in suggesting, oh, you have to look to the sentencing record. But that's a case in which the indictment was in fact ambiguous on its face because in the means and methods description, that indictment referred to cocaine and also cocaine base, also known as crack. That's relevant for two reasons, Your Honor. First, that's what triggered that court to look at the sentencing record because of a facial ambiguity that we don't have here. Second, it's further evidence of the point we were just discussing that other indictments pre-Apprendi use the word cocaine as distinct from cocaine base or crack. Cocaine means powder. The word powder actually isn't in the statute. Cocaine is in the statute, and that's why charging documents and why trial court instructions and judgments, as in this case, all focus on the word cocaine. I will add, Your Honor, at sentencing, the trial judge specifically said there's no dispute that the statutory minimums are met in this case. That was at page 1450-51 of the sentencing transcript. The parties were not disputing what the statutory minimum was. The only thing being disputed at sentence was whether or not there was enough of either substance to trigger a very high base offense level for purposes of the sentencing guidelines. Again, it was easier for everybody to focus on crack where you only had to look at one person's testimony as opposed to a number of people's testimony. Thank you very much, Mr. Kamakura. Thank you. I think you've answered all our questions. I'm sorry, can I add one more thing? Yeah, sure. I do think it's worth commenting on the prosecutor's letter just as a matter of process. We don't think that that's meaningful on this record, partly because that letter never got sent to the court, so it can't possibly have either informed the court of what the court was doing or reflect what the court was thinking. But I also want to suggest it might be improper for this court to pay attention to that letter. I don't know that you can technically forfeit a piece of evidence that's in the record, but it would seem odd and perhaps unprecedented for this court to overturn a fact finding on clear error based on evidence that a party did not bring to the attention of the district court but brought to the attention of this court. That would open the door for gamesmanship, possibly, where litigants in the court below, who obviously lost on their factual claim, will say, oh, well, I'd better re-strategize and refocus and talk about something that I never even brought to the attention of the district court. That would seem like an odd way to run clear error review. And so I would suggest that prudence, if not law, would suggest not relying on the prosecutor's letter, which, as I said, I don't think means much in the context of this case. Thank you, Your Honors. Thank you very much. Thank you. A few minutes of rebuttal. Thank you. So I have many points I'd like to address, and I'm going to try to do it very briefly. So with respect to the concurrent sentence doctrine, applying that here would be inappropriate because of the possibility of adverse consequences. There are two such consequences. One, Dale has not been decided yet. So if you affirm before Dale comes out, Thornton would be precluded by statute from filing a second 404 motion. But second, even if Dale comes out badly for us, the right thing to do still is to remand because the district court made an error, and at any time Congress could change the penalties for homicides or call for the revisiting life sentences of those convicted of homicide offenses in late adolescence, like Mr. Thornton. Now, this is unthinkable. Here we are talking about resentencing in crack cases. Twenty years ago, nobody thought this would be possible. In the future, there could be a second or a third step act that calls for revisiting the sentences of those who were convicted of homicide in late adolescence. The important point is that maintaining the life sentence and the 40-year sentence on Counts 1 and 8 could matter down the line. Now, I want to just speak a little bit to why the word cocaine is in the indictment because I think you guys are curious about that. It speaks to the intent to distribute, and it outlines the government's case in chief. It signals that the case is about the manufacture of powder into crack. That's why it's there. It lays out the story that the government is going to tell. Now, if this is so obviously a crack case, it's interesting that the government has not pointed to a single quantity finding in the record that supports the sentences that Mr. Thornton is still serving today. Now, the government also, in reference to its discussion about the guidelines, says, hey, you know, this is just relevant conduct. But if it was relevant conduct, the judge would have had to do some math. It would have had to determine the amount and type of the substances and the amount of each, crack and cocaine. Other than the 10.1 grams of powder in the PSR, the sentencing court never found any amount of powder, and it certainly did no math. What does that tell us? Crack wasn't the relevant conduct. It was the offense conduct. Moreover, this idea about simpler math, frankly, Your Honors, is a concession that there's no finding triggering the penalties for powder in the record. The government has to agree that the sentencing court didn't make a quantity finding as to powder. It only made one of 1.5 kilograms of crack. Now, the government is inviting you to redo the sentencing. It says the sentencing court's comments about vast and immense quantities of powder is sufficient. But statutory penalties, the statute of conviction, is triggered by a numerical quantity, not an adjective. The cases on pages 6 and 17 of the reply illustrate this. Now, the government is also inviting you to examine the trial testimony to show that there was 5 kilograms of powder. Again, putting aside that this is a concession, it was the government's job to prove quantity at sentencing, and it didn't. What kind of relief are you seeking? You want it to go back to the district judge and he's going to make these findings and it's going to be concurrent with his life sentence? Absolutely not, Your Honor. So, really, this court and the district court now is bound by the quantity finding used to determine Thornton's statutory penalty at the time of sentencing. That's the 1.5 kilograms of crack. Combing through the record would be inconsistent with Boulding and with the government's proposed test of relying on the conviction-related documents alone. Now, it would also be totally inappropriate for this court, which is a court of review, to make findings on drug quantity that the sentencing court never found. You don't make findings of fact, you know that. That's correct, Your Honor. But that is what the government is inviting you to do when it says that you should look at the trial testimony to see that there was enough. Again, to trigger a statutory penalty... You could say it's not clearly erroneous. Pardon me? You could just say the district court's finding were not clearly erroneous. Well, the sentencing court's finding, correct. Okay, your red light's been on for quite a while. Oh, I'm sorry. And if we say it is, then all it does is go back and the court decides... Correct. Then it doesn't mean that he's entitled to anything. It just means that the district court now would evaluate the 3553A factors and determine whether a reduction on counts 1 and 8 is warranted, and if so, enter an amended judgment on those. Thanks very much to both of you for excellent briefs and oral arguments. We really appreciate it.  Very helpful to us. Thank you. The case will be submitted, and the clerk may adjourn court.